Case number 24-5076, Adam Steele and Chris Olcomer, a balance versus United States of America. Mr. Brantley for the balance, Mr. Brandman for the Epoly. Good morning. Morning. Appreciate the opportunity to be here today. I'd like to say a few things. Start everything I say here. We have my thoughts and my opinion. My opinions. I know you're going to have questions. But I would like to point out advocating for your clients here. Excuse me. Just trying to clarify when you say your opinions, you are here making arguments on behalf of your clients, correct? Yes, but we may get into tangential matters that would be might call for me to give my opinion on something. The matter is complex. I'm dealing with various adverse parties at the same time. I hope that's apparent for my briefs. I think in my briefs, I've made clear where I stand on the issues, and I know you have questions. But I would like to point out several months ago, a Pennsylvania CPA contacted me, told me he's been penalized $2,900 by the IRS for not placing a renewed PTIN on his returns that he's prepared for clients. He put his PTIN on the returns, and your PTIN does not change, and the statute does not allow the IRS to demand annual filings for PTINs. And I've been fighting this for going on 14 years, and I will continue to fight it as long as I can because it's an injustice that is sickening that the IRS won't back down, and the Department of Justice won't get them to stand down because there is no statutory basis whatsoever for what is going on here. On the claim splitting issue, what facts in your amended complaint that is before us, the one that the district court dismissed, are the facts in that materially different than the facts in the Steel One complaint? No. Are they the same? The same. Could I read from one page of the Smith opinion by Judge Lambert to go through why claim splitting does not apply here? First of all, I'd like to say the Hellersted case, in my opinion, is the law that overrides all of this. And if you've read my briefs, there were two claims in there. There are two different statutory provisions. Right, but drawn from the same... Are you relying... I understand that, but different statutory provisions and implications at different stages of litigation. Do your arguments come from two different statutory provisions? Not my arguments. In this case, the IRS... Your claims come from two different statutory provisions. From three. Different statutory. Yes. Different ones than the claims in Steel One are drawn from. No, not... No, so it's the same statutory provisions. Let me specify. Steel One is solely related to fees at this point. So that's under section... Let's go back to when Steel One started. Started... I'm going to ask my question. Did the statutory provisions that are issued in Steel One that have been through the course of the case, some have come in, some have gone out, are they different statutory provisions than are being presented in your complaint? No. Okay, I'm sorry. Do you want to read something? Can I say in Steel One, the only issue falls under 31 U.S.C. section 9701. What fees are lawful? Now, there were two other claims in the original complaint, as I said. It said stop renewals and stop asking more questions than that permitted by statute. As I pointed out in my original complaint, after Loving was successful, and I helped with that case on a pro bono basis, a Minnesota CPA came to me and said he wanted to challenge the fees. So I filed a complaint September 2014 with the help of another lawyer, and we challenged the whole licensing system, not specifically struck down in Loving. Well, it seemed that I needed to bring in some class action lawyers to help with the case, and I did. I did some research, and either I had to hire somebody. I brought in a firm, and they, although they didn't say it to me initially, they apparently only wanted to challenge fees. And as I laid out in my brief what happened, it resulted in these claims being taken out. And to me, that was wrong. But what was I to do at that point in time? At that point, you know, they still put in the no excess information request claim. So I thought to myself, although the renewal is out, and that's a bad thing, if all they can ask are the questions to identify a person, which on the form W7P, which when they previously issued 1P10, there was no renewal, they asked your name, your social, your date of birth, and your address. And on a prepared return, and I do returns for part of my living, they get a lot more, the IRS gets a lot more information than that stuff. So if that claim had been successful, I'm pretty certain the renewals would have stopped, because they don't need to get your name, date of birth, social, and address. When they get more than that from what you put on the return, you put on your name, your P10, your address, your firm name, et cetera, I've got it all in my briefs. But as far as, so I think Hellerstedt is the law, and I think under Hellerstedt, these claims, which are distinct from the fees, these claims fall under 6109 of the Internal Revenue Code, and or 31 U.S.C. 330. They're not fee claims. But let's say claim splitting still applies. This is Judge Lambert's 2019 opinion, and he goes through the various, I'll just do this briefly, the various preceding cases. And he says, he announces the Clayton case would be precluded under res judicata analysis if the first suit was already final. Well, if the class action was final, these claims will not be resolved, because they are not covered in that case. All that's in that case are fees.  The class action case is not final. I know, but the only issue remaining is the amount of fees. But the class action is not final. But if it was final, these issues would not be resolved. They would not be res judicata. That's the point from this Clayton case. But why couldn't the claims have been brought in that first action? It sounds like it was a strategic decision not to bring them. In this case, the decision was to put them in. I explained in my briefs. Steal one. The judge was talking about steal one in the first place. They were in the original complaint. They were. Okay. I brought in this class action for him to help me. They wanted to just challenge fees. I understand. But when that case becomes final, it will be res judicata as to all claims. No, it will not. It will be res judicata as to fees only. No, that's not how res judicata works. It's claims that were or could have been raised in the initial litigation. And they certainly couldn't have been raised there, because, in fact, they originally were raised there. So that's just how res judicata. That's not how I read Hellerstedt. Res judicata is no protection against people serial litigating. But I think the whole point of Hellerstedt was if you have statutes coming out of an originating act that have different provisions in them, you don't have to challenge all at once. And you wouldn't have standing in a lot of cases to challenge things that you're not negatively impacted by. And so. There's no standing question here. No, there's no standing question here. But so I disagree on res judicata respectfully. I think that this Hellerstedt case says, unlike Hellerstedt, where the statutes were drawn from the same act, these were drawn by the IRS in publication 4832 from three separate statutes. Okay. The fee statute is 31 U.S.C. 9701. The licensing statute was 31 U.S.C. 330. And the ID requirement was 26 U.S.C. section 6109. All right. So I have a stronger case than Hellerstedt, which I believe is the law. And going on to Judge Lambert's opinion, he says, you know, but still other courts in this district have declined to dismiss a second action under claim splitting where the court previously precluded the plaintiff from adding the claims and defendants in the prior suit. Well, I tried to add these claims back in 2020, as I pointed out in my briefs after this court ruled that there could be charges for pizza and issuance and renewal. And thus, I said to my co-counsel, if there's no renewal and the statute doesn't provide for renewal, they can't charge renewal fees. So let's challenge this renewal aspect. They didn't want to. They didn't want to. So I had to go, as the district court will say, I had to go rogue and do it on my own because I've got to represent these people who hired me. They hired me individually. And I was, for my contract with them, I had the right to bring in other firms to help me. So I brought in this firm to help me, not to take control, not to take claims out of the original complaint. And they never said at the beginning, we want to take out these claims that are in this original complaint. And my contracts with them don't say anything about that. So when I went through this process of when we had to amend the complaint in 2015, I said, keep this stuff in. I explained exactly what happened. I've got the written proof right here of what I said to them. I mean, so anyways, but in any event, if the district court had handled the excess questioning claim, which the government never questioned, was still in the complaint, because we argued it in 2022 in summary judgment briefs because everyone understood that that issue was ongoing. And the judge or whoever is behind the curtain there at the district court, I don't know who's deciding these cases, calling me class counsel in exile. But I don't think it's an 80-year-old district court. I'm sorry, judge. Okay, I don't think we're going to go there. I think your time now is up, but we will give you a couple of minutes for rebuttal. Thank you. Appreciate it. You please, the court. Robert Brandman for the United States. I'm not sure I have a whole lot to add. Mr. Buckley has made the government's case pretty well. You've made a jurisdictional bar argument about the content of the questioning under 44 U.S.C. 3507 D1. As I read that, that only precludes actions against the director or the OMB. It does not preclude actions against the originating agency. That's just textually what it says. So what's your best authority that in this provision that bars review of the director's decision, director of OMB's decision, that Congress meant it barred review of every agency's? Any challenge to any agency's decision to include informational content in a regulation? I don't know. I interpreted that as being, you know, barring any challenge to the form or, I guess, the substance of the. That's textually what it says, though. Okay. I didn't find a case just like this, so I may not be able to have anything to add to that. Okay. Because what is not subject to review is the decision by the director to approve or not act. That's all the provision says. What would be the point of barring suit against the director if it. Why would anyone want to sue the director if they could sue the agency that is putting out the form and obtain the same relief that. Well, I'm not in the habit of answering counsel's questions, but I will tell you that, in fact, Congress created a whole special scheme here for review and actions by an agency, the OMB. And it may have wanted to say that this thing is meant to be, have a particular role internal to the government of internal policing about agency regulations. And we don't want it to launch its own avenue of litigation because as soon as something can be sued about, it will be sued about. But we also, that's pretty well established, construe bars on judicial review narrowly. And this one, just by its plain text, doesn't apply to every agency. And so I would have, I'm just a little surprised that the government aware of that precedent is reading the statute. The bar, which is imposed such a sweeping bar on judicial review. Maybe I don't have an answer. Okay. Yes, to claim splitting. But isn't the PRA really looking at barring judicial review from the decision making process of OMB? That's what is that what you're looking at this case as the decision making process, as opposed to the overreach of the statute. With regarding its authority. In other words, I'm trying to get a sense more of why you believe that the PRA precludes judicial review based on what? Is it the decision making process of OMB? It's the fact that, yes, the OMB goes through the process of, or the agency goes through the process of publishing those rulemakings and comments and submitting the forms to the OMB and OMB approves them. But wouldn't that be a different question on decision making process as opposed to OMB exceeding its authority like a challenge to the authority as opposed to just the decision making process? I have not thought deeply enough about the, this process. Generally do tax litigation. As for claim splitting, we have established that we have the same claims, the same parties, the same court claims that were actually brought in the steel one. And an additional factor under weighing in favor of Judge Lamberth's exercise. The fact that steel plaintiffs moved to amend their complaint in the main case, Judge Lamberth denied the request. What standard of review should we apply to the district court's decision on claim splitting? De novo or abuse of discretion? All the other circuit courts I could find that had dealt with it used abuse of discretion. Seems a little odd because the claim splitting is essentially a race judicata claim minus finality step. And race judicata, applications of race judicata are reviewed de novo. So what's the rationale for applying abuse of discretion when it's making the exact, what we're reviewing are the exact same questions we would review de novo if this were a race judicata case? I think the main cases speak of the doctrine in terms of case management. Well, that's not the only thing that it's in charge of. It's also prevents, I would have thought the government would have been of the view that it protects the government from having to fight on multiple fronts simultaneously when something could be consolidated in a single case. So it also protects interests of the parties in consolidating an efficient litigation and not being spread too thin by somebody who chooses to litigate multiple cases and sometimes multiple fora. Is that not an interest of the government? No, it is. Yes. Well, then that wouldn't be protected by a docket management analysis. No, no. I was just giving the court what other other appellate courts. So the government doesn't have a position on what the standard review is. No. But I did want to finish my last point was that Judge Lamberth denied a motion to amend the complaint, presumably explaining that there had been prejudice to the United States through undue delay, causing prejudice and futility. And the new complaint is a sort of in run around Judge Lamberth's denial of that motion. No more questions, I'll close. Thank you very much. Thank you. Mr. Buckley, we'll give you two minutes. I just would like to say that I... Sorry, just wait until you're at the podium to start speaking, please. I don't agree that these are the same claims that exist in Steel One, the class action. The only claim that exists there now are whether the fees are excessive. That's the only remaining issue because the judge decided, said that we did not bring the excess questioning claim in Steel One. But I firmly disagree with that. I think the Department of Justice's lawyers would disagree if asked because they briefed the entire issue and never raised that claim. They never said this wasn't in the complaint because everybody knew it was. And so that shocked everybody in early 2023 when the district court said the issue is not in this case. And so at that point, I decided what else can you do if the court won't rule on it when you need it ruled upon? And I also wanted to get the renewal issue handled, although if that issue alone is handled, like I said earlier, I think renewal stops because they get a lot more information on our prepared returns than they do from a form that provides your name, your social, your date of birth, and your address. So as I read the Smith case that Judge Lamberth issued the opinion on, he cited three different cases. Can I finish real quick with that? You got 28 seconds. OK. So as again, you know, he said that the issue would have to be res judicata when the other case is finished. I don't think it will be because all is being handled there is fees, not these other two issues, he said. Yet, regardless of whether they apply the rule in a given case, all seem to agree that courts can discretion discretionally dismiss claims for subsequent actions for claims splitting. If the claims may still be advanced in the first action, they may not be because the court will not allow it. Thank you. Thank you very much to both counsel. The case is submitted.
judges: Millett; Childs; Ginsburg